## Noonan and another vs. Orton. (In Equity.)

*Res Adjudicatæ.— What covenants in a lease run with the land.—Liabilities of the assignee of the reversion.*

1. Former decisions in this cause (on demurrer to the complaint), that a certain contract between plaintiffs and defendant's grantors was not a demise of water merely, but of an interest in land, and that the lessors' covenant to renew the lease runs with the land and binds defendant (who took the reversion with knowledge of the lease), followed, as *res adjudicatæ.*
2. Covenants to raise a dam to a certain height, to keep the dam and flume in good repair, and to supply lessees with a certain quantity of water, run with the land on which such dam and flume are situate. Per COLE, J.

    COLE, J., was of opinion that the assignee of the reversion, although under a covenant by his assignors to extend the lease for ninety-nine years upon a notice that the lessees so elect, he is bound to execute a new lease in form for said term of ninety-nine years, should not be required to bind himself therein to the fulfillment of the other covenants above named *for the whole of said term,* but only while he retains title to the land.

    DIXON, C. J., was of opinion that the original lease contained a demise for the future term of ninety-nine years, to take effect at the lessees' option and upon notice by them; and that no new lease was contemplated by the parties, or should be required.

APPEAL from the Circuit Court for *Racine* County.

This is an equitable action founded upon the lease described in the foregoing case (p. 272), and the original bill was filed January 19, 1855. Decisions

of this court upon former appeals herein will be found in 4 Wis. 335–342, and 21 Wis. 283–294. The report last mentioned contains a full outline of the pleadings and proceedings up to the January term of this court, 1867, which will not be repeated here. The order of the circuit court overruling defendant's demurrer to plaintiffs' second supplemental complaint having been affirmed by this court, the cause was remitted for further proceedings. The defendant then filed an answer, denying that at the time he purchased and first took a conveyance of the land and water-power of Wolcott, Dousman and the Cottons (which is alleged to have been on the 1st of November, 1852), he had "any knowledge, or any definite information," of the lease from his grantors to plaintiffs, and denying that such lease was witnessed and acknowledged in such a manner as to entitle it to record, and further denying that he ever received rents under the lease, as such, from the plaintiffs. The answer also put in issue the material averments of the original and supplemental complaints upon which the prayers for injunctions and for damages were founded. By a supplemental answer, defendant, among other things, alleged that " on the 6th of April, 1866, he sold and conveyed all and singular the said dam, water-power, use and right of flowage, with the land on which the same are situated, and all the right, title and interest of this defendant in and to the same, to one Diana C. Mason, of Waukon, Alamakee county, in the State of Iowa, who is now the owner and entitled to the possession thereof." This part of the supplemental answer was afterwards stricken out by order of the court. When the cause came on for trial in said circuit court in October, 1868, the court decided that it would hear and determine at that time only so much of the issue as related to the covenant for a renewal of the lease, and would reserve the other questions raised by the pleadings to be deter-

mined by a reference, or a further trial by the court; and "thereupon the parties proceeded to trial of the issue upon the covenant to renew the lease."

On the trial, defendant testified, without objection, that he had sold and conveyed said water-power, dam and appurtenances to Diana C. Mason, by deed bearing date April 5, 1866. On cross-examination, he testified that he thought he made the deed the day it was dated; that Mrs. Mason was his sister; that the deed was delivered to her attorney, and had been recorded; that the consideration paid for it was one dollar; that there was no writing or understanding with Mrs. Mason, by which he reserved any control over the property; that he made the deed because he had a mind to, and because he was willing to make a free gift to his sister, so that she might control it forever.

The evidence for the plaintiffs, as well as that for the defendant, showed that the water used by the plaintiffs was delivered to them on their own land through a flume or race built and maintained by the lessors on the land of the latter. The defendant offered to show by witnesses, 1. That plaintiffs had constantly, during the years 1852, 1853 and 1854, and up to the date of the going out of the dam (in 1866), drawn and used from said flume and race, for and in the paper-mill, more than 4,000 cubic feet of water per minute, under a head of sixteen feet, and that they refused to pay therefor, or for more than 1,000 cubic feet per minute. 2. That at the date of the lease, and during the whole four years' term therein mentioned, the dam was not more than twelve feet high, and that between the date of said lease and the first of May thereafter was a reasonable time within which to have raised the dam to the height of sixteen feet.

The evidence as to other points need not be stated here. The court found, *inter alia*, that defendant pur-

chased and took a deed of the water-power, dam, etc., and the lands connected with them (except the land on which plaintiffs' paper-mill is situate), in November, 1852, *subject to the lease to plaintiffs* ; that in December, 1854, plaintiffs served a written notice upon defendant that they elected to have, and demanded, a renewal of said lease for ninety-nine years, and elected to take an additional thousand cubic feet of water per minute ; that about the 8th of January, 1855, plaintiffs made out and exhibited to defendant a certain instrument of renewal (described in the complaint), and demanded of him that he execute the same, but he refused to execute it, and then refused, and has ever since refused, to renew or extend said lease. The court also found, that notice of the pendency of this action was filed in the proper office June 4, 1866. As conclusions of law, the court held that the covenants in said lease, to extend or renew the same for ninety-nine years; to raise the dam to the height of sixteen feet; to keep said dam in repair; to furnish plaintiffs with 1,000 cubic feet of water per minute, with the dam at sixteen feet in height, or an equivalent power, to be drawn from the dam or reservoir at said water-power, and conveyed in a flume or race to the paper-mill of plaintiffs—do all run with the land so as aforesaid conveyed to the defendant, and are binding on him ; and that a judgment for the renewal or extension of the lease with the covenants so running with the land should be entered ; and also judgment perpetuating the injunction granted on the filing of the original bill, in 1855 (to wit, an injunction restraining defendant from hindering the plaintiffs from drawing water from the dam equivalent to 2,000 cubic feet per minute, etc.). Judgment was entered accordingly, which required an indenture of lease, in a certain specified form, to be executed by the defendant, under date the 8th of January, 1855. The covenants expressly set out in said form are those

specified above as running with the land; and there is a further agreement between the parties, " that all covenants in said lease bearing date January 8, 1851, running with the land and binding upon the respective parties, or either, and not herein inserted, he and they agree to keep and perform, and that they shall be binding as fully as if those or like were herein inserted." The judgment provides further, " pursuant to a stipulation made by said *Orton,* and filed in this action, that in any action or actions on said lease herein adjudged to be executed, against said *Orton* or his representatives, said lease shall be of the same force and effect to sustain such action or actions as if it had been made and delivered on the day it bears date, and that said *Orton* shall be estopped from setting up and maintaining any defense to such actions, or any of them, which he could not have set up and maintained if said lease had been executed and delivered on the day it bears date; and said *Orton* shall not plead the statute of limitations to such actions thereon, in violation of such stipulation. Said *Orton* may, however, plead the pendency of this action in such actions on said lease, so far and to the extent of the damages claimed herein, or any judgment [herein] respecting such damages if they are the same embraced in such action or actions on said lease, and [if] this action shall not be dismissed, as to such damages, before the time of pleading such defense."

The judgment further provided that if defendant should refuse to execute the prescribed lease, he might be proceeded against as for a contempt, or the plaintiffs might have such lease executed by a special commissioner in the defendant's name; and it appoints a special commissioner with due authority to execute the lease if requested by plaintiffs, and provides for necessary modifications in the form thereof in case it should be so executed. By a further provision, the court retains the right to make a further

order or judgment in the cause, which shall in itself operate as a lease binding on the parties. The injunction granted on filing the original bill, restraining defendant from preventing the use by plaintiffs of an equivalent of 2,000 cubic feet of water under a head of sixteen feet, is made perpetual. And finally it is ordered that "the other issues or questions involved in this action, including costs, damages, the perpetuation of the second injunction, granted in 1856 (21 Wis. p. 286), and whether a decree requiring said *Orton* to rebuild the dam should be made or not," might be tried at the next term of the court.

From this judgment the defendant appealed.

*E. Mariner*, for appellant, argued that, although, on demurrer to the original bill, the court held that by the contract the water was to be taken *by the lessees at a place designated on the lessors' land*, and that an interest in the land was therefore vested in the lessees by the agreement, and that consequently the covenants ran with the land and bound the defendant (4 Wis. 335), yet since it now appears by the supplemental bill and the evidence that the covenantors were to deliver the water to the covenantees upon the land of the latter, the decision upon the demurrer does not apply to the state of facts thus shown, and does not operate as an estoppel upon the defendant. 2. That inasmuch as the water was to be severed from the stream and from the covenantors' land before it could be used by the covenantees, it was a mere covenant for the delivery of personal property, and therefore a mere personal covenant, and the assignee of the water-course was not bound. *Spencer's Case*, 1 Smith L. C.; *Wheelock v. Thayer*, 16 Pick. 69; *Mitchell v. Warner*, 5 Conn. 497; *Hurd v. Curtis*, 19 Pick. 459; 21 Barb. 478. 3. The party seeking specific performance is not entitled thereto unless he has kept his contract. Defendant offered to prove that

plaintiffs had used over 4,000 cubic feet of water per minute for three years prior to the notice of their election to use additional water, and had refused to pay for more than 1,000, contrary to their covenant, and that from the service of such notice until the dam went out, they used more than 4,000 cubic feet, and refused to pay for any of it. The continuous trespass and the refusal to pay rent are sufficient reasons for refusing specific performance. *Lewis v. Bond,* 18 Beav. 85; Woodfall's L. & T. 866–868; *Somerset v. Gourlay,* 1 V. & B, 73; *Gregory v. Wilson,* 9 Hare, 683; *Moore v. Blake,* 1 Ball & B. 62; 1 Bligh N. S. 594; 1 Platt on Leases, 628–629; Story's Eq. Jur. §§ 769, 771. The court should at least have ordered an account of the rents, and have retained the lease as security for their payment. 2 Platt, 639; 4 Mad. 437. 4. The first impression would be that nothing need be done to ensure the extension of the lease other than to give the notice. *Chretien v. Doney,* 1 N. Y. 419; 18 Conn. 222; *House v. Burr,* 24 Barb. 525; *Kramer v. Cook,* 7 Gray, 550; *Beale v. Sanders,* 32 E. C. L. 354. 5. If the court was right in adjudging the execution of any lease, that required to be executed is too broad. A covenant to give a new lease means a bare demise without covenants. *Willis v. Astor,* 4 Edw. 594; *Rutgers v. Hunter,* 6 Johns. Ch. 215. There is no covenant in the old lease to give a new lease *subscribed by the defendant;* and such is not the legal effect of a covenant to renew or extend. Platt on Leases, 629. The only way in which that contract can be specifically performed is to have the personal liability of Wolcott, the Cottons and Dousman. There might be a judgment that the covenant to extend runs with the land, and that the lease be extended by the judgment; but, without making Wolcott, Dousman and the Cottons parties, no personal covenants can be adjudged. 6. The defendant is liable, by reason of privity of estate, only for breaches while the estate

is in him. Platt on Leases, 416, and cases there cited. He parted with the title to the property two years before the judgment; yet he was required by the judgment to covenant for ninety-nine years. Again, the judgment compels defendant to covenant that he will raise the dam to the height of sixteen feet, when that covenant in the original agreement was broken long before the defendant purchased the land, and no action at law on the covenant could be brought. *Mirick v. Bashford*, 38 Barb. 191; *Tillotson v. Boyd*, 4 Sandf. 516; *Shelton v. Codman*, 3 Cush. 318; *Wheelock v. Thayer*, 16 Pick. 68; Woodfall's L. & T. 167 *et seq.*

*I. P. Walker* (with *J. Downer*, of counsel), for respondents:

1. It has been decided in this case that the contract is a lease of land, and that the covenants run with the land. 4 Wis. 335. This includes all covenants that touch and concern the thing demised, which will cover not only the covenant to renew the lease, but also all those which are inserted in the new lease, which the judgment herein directs to be executed. *Easterby v. Sampson*, 9 B. & C. 506; *Spencer's Case*, 1 Smith's L. C. pp. 96 *et seq.*, and notes; *Myers v. Burns*, 33 Barb. 401; *Denman v. Prince*, 40 id. 213; *Norman v. Wells*, 17 Wend. 136. 2. Plaintiffs are entitled to a renewal of the lease, to be executed in proper form by defendant. This is not only the clear meaning of the contract, but is decided or assumed in the previous decisions in this cause. 4 Wis. 335; 21 id. 283. 3. Defendant's offer to prove that a reasonable time had elapsed to raise the dam, etc., before he purchased, was rightly overruled; because, (1.) There was no averment of such a defense in his answer. (2.) The provisions of the lease may reasonably be construed as in the alternative, either to raise the dam to sixteen feet, or furnish an equivalent of 1,000 cubic feet with the dam at that height. If

so, then the evidence, if received, would have shown no breach.   (3.) If there was a breach, still the damages were only nominal ; and when, on such covenants as this, and even on covenants of seizin, only nominal damages can be recovered, and farther *real* damages may accrue, they are treated as continuing covenants and running with the land.   *Kingdon v. Nottle*, 4 Maule & Sel. 53 ; *King v. Jones*, 5 Taunt. 418 ; *Martin v. Baker*, 5 Blackf. 232 ; *Reasoner v. Edmundson*, 5 Ind. 393 ; *Backus v. McCoy*, 3 Ohio, 216 ; *Devore v. Sutherland*, 17 id. 60 ; *Dickinson v. Desire*, 23 Mo. 162 ; id. 179.   4. Defendant's offer to prove that plaintiffs had received 4,000 cubic feet of water per minute, under a head of sixteen feet, and had refused to pay therefor, or for more than 1,000 cubic feet per minute, was rightly overruled.   (1.) There is no allegation in the answer under which the proofs could be received. (2.) Before the expiration of the four years' lease plaintiffs had a right, by the lease, to use *gratis* all the water over 1,000 cubic feet per minute not wanted by other mills ;* and there is no averment or offer to prove that any was wanted by other mills.   (3.) The covenant to extend, and that to pay rent accruing before the time of renewal, are independent covenants ; the non-payment of rent is therefore no defense.   *Morris v. Sliter*, 1 Denio, 59 ; *Watts v. Coffin*, 11 Johns. 495 ; *Hill v. Bishop*, 2 Ala. 320 ; 2 Duer, 435.   But the covenant to extend, and that to pay rent after the extension, are so far dependent that the renewal is a condition precedent to the payment of rent.   (4.) If

---

* The provision of the lease here alluded to, and which has not been noticed in any previous report in this cause, was as follows:  "And it is further agreed by the parties hereto, that at any and all times during the said period of four years, if there shall be a surplus of water after supplying all the leases heretofore made by us or that may hereafter be made by us for the same, or after supplying all the machinery that may be in operation at said dam or water-power and propelled thereby, said parties of the second part shall have the privilege of applying such surplus to their own use in propelling the machinery at their said paper-mill."—Rep.

Noonan and another vs. Orton. (In Equity.)

plaintiffs used more water than they had a right to use by virtue of the contract, they are liable in tort, but not on the contract nor in this action. 5. The evidence that defendant conveyed the water-power to his sister, although not objected to, ought not to have been received, and is immaterial, and cannot be considered, because there is no supplemental answer setting it up. This action was commenced before any statute required a notice of *lis pendens* to be filed; and all statutes requiring such filing relate only to actions thereafter brought. This action, therefore, is of itself, according to the law before the Code, notice to all the world. The fraudulent or sham conveyance in question has no bearing upon this suit. Judgment must be rendered according to the rights of the parties when the suit was commenced. Especially is this the case after the stipulation filed in the case by defendant, by which the lease is dated back to 1855, and he gets the benefit of a jury trial in any action which may be brought against him on the covenants in the lease.

The following opinions were filed at the June term, 1869:

COLE, J. In the action at law between these parties upon the covenants of the lease for rent, or for use and occupation, I have stated my views upon the question whether the lease was extended for the term of ninety-nine years from the 8th of January, 1855, merely by the act of the lessees giving the notice that they elected to have the same extended or renewed for that period, or whether the instrument contemplated the giving of a new lease. It is probably only necessary to add here, that I adopt the latter construction, holding the contract executory in its character, and requiring the lessors or their assigns to execute a future lease.

When this cause was first before this court (4 Wis. 335), on a demurrer to the bill filed for a specific performance of the covenant to renew the lease, it was decided that the lease was not a demise of water merely, distinct from land, but that an interest in land passed by it to the lessees; and further, that the conveyance of the same land subsequently to the defendant, with actual knowledge of the lease, was subject to the easement created by it, because the covenant to renew was one running with the land and bound the assignee of the reversion. The counsel for the defendant has criticised somewhat the soundness of that decision, and has attempted to restrict the extent of the propositions of law there decided. But it seems to me impossible to say that the above points were not fairly raised by the issue of law presented by the demurrer to the bill, and passed upon by the court. So that, whether rightly or erroneously decided, those questions are no longer open for discussion, but are clearly *res adjudicatæ*. I shall therefore not further notice them.

In proceeding to consider the other points of the case, properly before us on this appeal, it is obvious that the first and most important question is, as to the extent of the obligation assumed or imposed by law, by the covenant to renew, upon the assignee of the reversion. Does the covenant to renew or extend the lease necessarily imply that the assignee shall give a new lease containing all the covenants in the original lease for the full term of ninety-nine years, and render himself personally liable for the performance of these covenants, whether he retains the estate or not? Is this the extent of his liability in consequence of purchasing the property and by reason of the privity of estate existing between him and the lessees? In this case these become very important questions, when we consider the fact that the lease is to be renewed for ninety-nine years, and that the

former lease requires the lessores, in addition to fur-
nishing two thousand cubic feet of water per minute
under a head of sixteen feet, also to raise the dam to
the height of sixteen feet, and during the continuance
of the lease to keep the dam and flume conveying the
water to the lessees' mill in good repair.   Now, must
the defendant render· himself liable by express con-
tract for the performance of these covenants, not only
while he owns and enjoys the estate, but even after
he has parted with his title?    Is this the obligation
which the law imposes upon him in consequence of
the relation of the parties?    The circuit court held
that he was bound to give a lease containing all the
covenants of the former lease, and to become per-
sonally liable for their performance, whether he
retains the estate or not; and this, too, in view of
the fact testified to by him on the trial without objec-
tion, that he had conveyed the property to his sister
about two years before the judgment.    Is this such a
decree as the lessees are entitled to from a court of
equity?    It seems to me that it is not.

On the part of the defendant it is insisted that a
covenant to renew the lease, even as between the
original parties to the contract, is fully satisfied and
performed by the covenantor executing a bare demise,
without any covenants whatever.    The cases of *Willis
v Astor*, 4 Edw. 594, and *Rutgers v. Hunter*, 6 Johns.
Ch. 215, are particularly relied on in support of this
position.    In *Willis v. Astor*, where the bill was filed
by the lessee to enforce a specific performance of a
covenant to renew, the question arose as to what
covenants and conditions the new lease should con-
tain.    The lessor had tendered a lease, which, in addi-
tion to the covenant to pay the rent, also required
the lessee to covenant to pay all taxes and assess-
ments against the property, as in the former lease.
Vice-Chancellor McCoun held, that a covenant even
to renew a lease did not necessarily imply a lease

with all the covenants in the former, but only a lease for the same term and rent, and, therefore, that the lessor was not entitled to have inserted in the lease a covenant to pay the taxes and assessments. I will say, in passing, that I have considerable doubt about the entire correctness of this decision, and think the better opinion is, that, as between the original parties to the agreement, a covenant to renew implies that the new lease should be with the like covenants and conditions as in the old lease, except the covenant for renewal, which is not favored in the law, since, if that were inserted also, it would in effect create a perpetuity. See *Piggot v. Mason,* 1 Paige, 412; and *Whitlock v. Duffield,* 1 Hoff. 110; *Carr v. Ellison,* 20 Wend. 178; *Tritton v. Foote,* 2 Brown's Ch. R. 497. In *Rutgers v. Hunter* the covenant was, that at the expiration of the term the lessor would pay the value of the buildings, to be appraised in the mode prescribed, or would renew the lease, or re-demise the lot at such rent and upon such terms as might be agreed upon between the parties. The lessor, being dissatisfied with the appraisement which was made, tendered a lease for the same term and at the same rent as in the former lease. The decision was, that the lessee was bound to accept the new lease, or give up a claim for the appraised value. The chancellor decided the case upon the clause binding the lessor to " renew the said lease; " and said that this language implied a lease for the same term and rent as the former. He added: " The covenants in the first lease relative to the buildings were no necessary part of it, and it would be absurd to suppose that an agreement to renew a lease did necessarily imply a lease, not only of the same term and rent, *but, also, with all the covenants in the other,* and which are the accidental and not the essential parts of a lease. In the first lease, there was a covenant on the part of the lessee to build a good brick dwelling-house within two years. This was a cove-

nant that had no necessary, and could not have any reasonable, connection with the renewal of the lease; and the same observation will apply to the covenant on the part of the lessor to pay, at the expiration of the lease, the value of such house, and of other buildings and improvements to be made, built and erected on the lot, or to renew the lease." Pages 218, 219. This case, however, is far from being an authority in support of the position that the covenant to renew in the present case would be fully kept and performed by the lessors or their assigns barely executing a lease of the two thousand cubic feet of water per minute, under a head of sixteen feet, without the other covenants. The covenants to raise the dam to the height of sixteen feet, and to keep the dam and flume conveying the water in repair, are most essential parts of the lease, and really render the power demised valuable and beneficial. They are really " covenants that touch and concern the thing demised," and enhance its value. And " it would be absurd to suppose an agreement to renew " this lease did not necessarily imply the giving of another lease with these important covenants. They are in no sense accidental and unessential parts of the thing demised, as the chancellor held those covenants to be in *Rutgers v. Hunter*, about which he was speaking. They are important parts of the lease, and the parties doubtless intended that these covenants should be inserted in the renewed lease. I therefore think it an unsound position to say that the covenant to give a new lease would be kept and performed by executing a bare demise, without covenants.

But to what extent should the defendant be compelled to assume personal liability for the performance of these covenants? For the solution of this question it is well to keep in mind the nature and character of these different covenants in the lease. The covenant to renew is satisfied as soon as the lease is renewed.

The other covenants are burdens upon the estate during the continuance of the lease. The defendant, if he has not rendered himself incapable of performing the covenant to renew by alienating the estate, may give a new lease, and thus fully satisfy that covenant. But not so in respect to the other covenants. Breaches of those covenants may occur long after he has parted with the estate. Now, as his responsibility does not arise upon contract, but grows out of a privity of estate, it seems to me that it continues in respect to those covenants only so long as such privity exists. And upon his ceasing to hold as assignee, his liability for future breaches is at an end. His personal liability upon those covenants should be limited to the time of the continuance of his interest. Thus he is made to bear the burden while he enjoys the benefit, and is only made responsible for covenants broken while he owns the estate. For why, in respect to those covenants, should his liability be greater than though he purchased the estate after the lease had been renewed by the lessors? In that case it is very clear that he would only be liable for all such breaches as occurred during the continuance of his interest. It is a general principle in respect to assignees that their liability upon covenants ceases with the privity of estate. Hence it is laid down in Taylor's work on Landlord and Tenant, that "an assignee may discharge himself from all liability for subsequent breaches, both as regards the rents and other covenants, by assigning over, even though it be done for the express purpose of getting rid of his responsibility, and although the second assignee neither takes possession nor receives the lease. As for instance, to a beggar, a *feme covert*, or a person who is on the eve of quitting the country forever, provided the assignment be executed before his departure; and even although the assignee receive from the assignor a premium as an inducement to accept the transfer."

Section 452. And see cases referred to in note 5, 1 Wash. on Real Prop. p. 438. I think, therefore, that in any lease which the defendant may be required to execute, his personal liability upon the covenants should be so qualified and limited as to render him responsible only for such breaches as may occur while he owns the estate. It seems to me the law imposes upon him no further or broader duty or obligation.

There is another fact which appears in the case, and that is, that the defendant conveyed the property to his sister by a deed bearing date April 5, 1866. It is said that this evidence should not have been received, although not objected to, for the reason that there was no supplemental answer setting it up. This may be so, but the fact is before the court that the defendant has parted with the title so as to be incapable of renewing the lease for the entire term. Can the court disregard that fact, and decree him to specifically perform a thing he is incapable of doing? *Hall v. Delaplaine*, 5 Wis. 206; *Greenaway v. Adams*, 12 Vesey, 395. The defendant might properly be required to execute a lease, with the covenants contained in the original lease, for the period the title was in him—that is, from January 8, 1855, to April 5, 1866—so as to give the lessees a remedy upon it for any breaches occurring during that time. It is said that the conveyance from the defendant to his sister is a sham conveyance, made without consideration, and in fact never delivered to the grantee or any one for her. If the deed never was delivered, then the title still remains in the defendant. But if the deed did become operative and carried the title to the grantee, I do not understand that the lessees can impeach the *bona fides* of that transaction. I do not understand that there is any principle of law or equity which requires the assignee of the reversion to hold the estate for the benefit of the lessee. It is also said that the decree will bind the grantee in that

conveyance, although she is not before the court, because she took the estate *pendente lite.* This may be so. I have only alluded to this conveyance because it seemed to me the fact could not be ignored or disregarded by the court, that the defendant had disabled himself from performing the contract of renewing the lease for the entire term. To my mind there is something inconsistent and illogical in requiring a party to give a title which he has not got.

I make these observations for the purpose of putting the court below in possession of my views. Owing to the disagreement between myself and the chief justice upon the main question, whether the lease has already been extended, no directions can be given. We both agree that the judgment should be reversed, but for quite different reasons; he, because he deems the relief asked unnecessary; and I, for the reason that the relief granted is too broad.

The judgment of the circuit court must be reversed and the cause remanded for further proceedings.

DIXON, C. J. I have already fully expressed my views of the merits of this case in my written opinion in the case of *Orton v. Noonan & McNab,* just decided, which was an action at law to recover rents alleged to be due and unpaid upon this same lease. I hold that the lease was extended for the further term of ninety-nine years upon the lessees, the plaintiffs here, having signified their wish to that effect, as provided by the lease, and that no new or further lease was contemplated by the parties or can be required. This contest is, therefore, for a mere shadow, since the plaintiffs already have, and had before the filing of this bill, all the rights and title which they seek to obtain by it, or which could be given them were the prayer of the bill in this respect specifically granted. Inasmuch, therefore, as the primary and

leading object of this action is to compel the specific performance of such supposed covenant to execute and deliver a new lease, and as that is the only relief granted by the judgment appealed from, I am of opinion that the judgment should be reversed, and the cause remanded with directions that it be dismissed.

If the main purpose of this action had been something different, as for example: if, proceeding upon the lease as an existing one, it had been to restrain the defendant from violating the covenants of the lease, and thus to secure, as has been said, a kind of specific performance of them, which courts of equity frequently do by injunction (see 1 Story's Eq. Jur. § 721, and cases cited)—then a different question as to the propriety of retaining the action might be presented. It might then be, perhaps, that the action should be retained, or the plaintiffs entitled to judgment for costs, notwithstanding it appears that the defendant has parted with his title to the premises. But as the case now stands, no reason is perceived by me why the action should be retained for any purpose. The damages to prevent which the injunctions were sought and obtained, as auxiliary relief, are transactions of the past. For such damages, whatever they may be, the plaintiffs have an adequate remedy at law, as the statute of limitations has not run yet. For them the plaintiffs may sue and recover upon the covenants of the lease; or they may set them up by way of defense to the action brought for the rents. The necessity for any injunction or for any equitable relief, as against the present defendant, is, therefore, entirely superseded; and there exists, in my judgment, no cause for retaining this suit. I think it should be dismissed.

*By the Court.*—Judgment reversed, and cause remanded.

On a motion by the plaintiffs for a rehearing, *Jason Downer* argued that in the new lease, including all covenants running with the land except that for a renewal, *Orton* should be bound personally for the full term of ninety-nine years. The contract of the lessors is, in effect, that whoever owns the demised premises at the time for renewal, will renew the lease with covenants *verbatim* as in the original, excepting sometimes that of renewal. If, then, the covenants inserted in the new lease are not what the original lessors must have inserted in case they had executed it, then the covenant to renew will not be fully performed, and the original lessors will still be (as they now are, and have been since 1854) liable to an action for a breach of that covenant. 1 Platt on Leases, 731, 732. And after a recovery had against them for such breach, they could recover back of *Orton*, not only the damages they had thus been compelled to pay, but also all costs paid by them in the action against them. 1 Platt, 731, and cases there cited. "Hence," says Platt, "whenever a lessor, who has covenanted for renewal, disposes of the reversion, he should, if possible, shelter himself · from future liability by procuring the lessee to release him from the future performance of the covenant. Without this precaution his covenant will remain in full operation until it be performed and satisfied by the assignee." How can it be performed by the assignee? By renewing with a restricted covenant, on which his liability will terminate with the termination of his estate? Can such a personal covenant as that carry over any liability at all to the *second* assignee? Again, is the covenant to renew performed and satisfied by the assignee so as to release the original lessor, unless the assignee steps into the shoes of the lessor, and makes as assignee the same unrestricted covenant that the lessor, in renewing the lease as lessor, would have been bound to make?

Again, there is no good reason why the assignee of the reversion should not be liable to the lessees to the same extent that he is to the lessors after they have paid damages for breach of the covenant to renew. And again, in an action at law against the lessors or their assigns, on the covenant to renew, there is no authority to the effect that the liability of the one is not commensurate with that of the others.  *  *  It is said that the assignee "is only made responsible for covenants broken while he owns the estate." Admitted; but the breach of the covenant to renew did happen while defendant owned the estate; and he is bound to perform that covenant *fully*, which can be done only by inserting the same covenants, *totidem verbis*, which the lessors would have been bound to insert had they continued to own the estate.  "Should the assignee of the reversion, on the arrival of the period of renewal, refuse to perform the covenant, the lessee may sue at his option the assignee or the original lessor, or both at the same time.  And should he commence a distinct action against each, and take several executions, the last taken in execution may have an *audita querela*." 1 Platt on Leases, 732. This clearly shows that the rule of damages is the same in an action against the assignee as in that against the original lessor, and that a satisfaction of damages in the one case is a satisfaction in the other.  Again, is there more than one person (save the original lessor), and that person the assignee owning the premises at the time of the breach of the covenant to renew, that is liable in an action at law for a breach of that covenant? And is he not liable for *all* the damages, as the original lessor would have been if sued? Can he, the next day after a breach of the covenant, convey away the premises, and, when sued at law on the covenant, set up such conveyance by him, and reduce the damages to a mere nominal sum? And can his vendee, when sued, do

the same, and so on *ad infinitum?* Could not the
second assignee answer in the suit against him, that
the breach did not occur while he owned the premises,
and that he was not liable thereon at all? And in a
suit for a specific performance would not the assignee
who held at the time of the breach of the covenant
to renew, be the only one whom the court could
require to make a new lease? And would not its judg-
ment as to a subsequent vendee with notice be, that
he be barred of any rights inconsistent with such new
lease?

Where there is a covenant for perpetual renewal, or
the lease by its terms clearly indicates that it is to be
perpetually renewed, or renewed more than once, not
only the original lessor, but his assignee, even though
a remote one, owning the premises when the time for
a renewal arrives, is bound to make a new lease, and
insert in it *the covenant of renewal;* and this is a *personal*
covenant, binding on both the lessor and his assignee
owning the premises at the time of the breach, and
each of them is liable at law personally thereon.
1 Platt on Leases, 731, 732, and authorities there
cited. These authorities show that when an assignee
is decreed to make a new lease with covenant of
renewal, he is personally liable thereon for the full
term. If, then, an assignee of the lessor is bound in
such a case to insert, on renewal of a lease, a covenant
to further renew, on which he will be personally liable
for a breach after he has parted with the estate, why
is he not also to give a lease by which he will be
personally liable on every other covenant therein run
ning with the land, for a breach *after* he has conveyed
the estate? Is there any more reason for holding him
personally liable in such case on a breach of the cove-
nant to renew than on a breach of that to repair—
both breaches happening after he had parted with the
estate? * * How can a lease with covenant for
perpetual renewal be carried into effect without, at

each renewal, the lessor in such new lease being personally liable for breaches of each and all the covenants to be inserted therein on his part during the entire term? Such leases frequently provide for the surrender of the original lease on the renewal lease being executed. We apprehend that this is only what is implied in all covenants for renewal, and that the new lease is to have the same covenants and conditions, *verbatim* and without limitation, as the old, except the covenant for renewal, which is to be inserted only when expressly and clearly agreed for. The assignee of the lessor and the lessee or his assignee are to stand in the new lease in the place of the original lessor and lessee, and the latter are to be thereby discharged from all liability for breaches of covenant occurring *after* the time fixed for such renewal. 1 Platt, 706–731.

In *Furnival v. Crew*, 3 Atk, 83, the suit was against the *heir* of the lessor; and it appeared that, as to a part of the demised estate, the heir did not have, by descent, a sufficient estate to support the lease. The court directed a renewal, with covenant of perpetual renewal, and other covenants; but Lord HARDWICKE said: "I do not say that the defendant is to insert the covenants *verbatim*, for, in forming the decree, he may be directed to covenant as far as his estate will go, so as to bind himself and all parties claiming under him." This doctrine of the right of the heir to restrict his covenants is recognized in *Earl Brook v. Bulkeley*, 2 Ves. Sen. 497; 1 Platt on Leases, 940. But these authorities are not to the point that even the heir may restrict his liability on the covenants *to the time he may own the estate*, but only so that he shall not be liable on them for more than the value of the estate he inherits, or bind himself personally that the lessees or their assigns shall have the demised estate for a longer period of time than he inherited it for, or take a greater interest in it than descended to him. But even the heir was required to make a lease with cove-

nant of renewal and other covenants, binding himself personally thereby for the entire term of the estate he inherited, although he might convey it, or his interest in it, the next hour. This case is a direct authority against an assignee, bound to renew a lease, restricting his liability on his covenants to the time he may own the estate. For an assignee is not in as favorable a position as an heir. In *Earl Brook v. Bulkeley and Hulse*, 2 Ves. Sen. 497, the facts are not very clearly stated, and are left somewhat to inference. But we may gather from the statements that an estate had descended to an heir, and the person from whom he had inherited it had given a lease with a covenant of renewal, by which a greater estate was to be granted or demised than he had. The heir, by his own personal covenant, assumed the liabilities of the original lessor, and then, before a breach of the covenant to renew, conveyed his interest in the demised premises to Hulse. It was held that the heir having, by his own personal agreement, assumed the liabilities of the original lessor, his conveyance of the estate to Hulse had the same effect, as to the liability of Hulse, as though the original lessor had conveyed to him; in other words, that he took as purchaser and not as heir, and had on him the ordinary liabilities of an assignee of an estate incumbered by a lease with a covenant to renew—and to renew, too, for a period of time beyond the termination of the estate conveyed to him. The court held that he must execute the new lease (as we understand it) with covenants to renew, although it would compel him to purchase a greater estate than he had, or to respond in damages on his covenant; in other words, that he must stand precisely in the place of the original lessor, and execute a new lease with unrestricted covenants; he could not take the benefit of the transfer of the estate to him, without taking all the burden. If, however, the decree was only that the defendant

should renew the lease for a term which extended beyond the termination of his own estate, with other express covenants, or even the implied covenants arising from the words " grant or demise" (those words at common law, and still in England, being held to operate as a covenant of quiet enjoyment— 1 Platt on Leases, 175, note Z ; 2 id. 9), that is sufficient to make the case an authority for defendant in this case being required to execute a lease which would bind him for breaches happening after he had parted with the demised premises.

But the extent of the liability of the lessor's assignee appears most clearly in *Taylor v. Stibbert*, 2 Ves. Jr. 437. There one Wood had made a lease of a *greater estate* than he had, and covenanted for a renewal, and then sold what estate he had to Stibbert ; and the action was by the tenant against Stibbert for a specific performance of the covenant to renew. The Lord Chancellor, after remarking, in substance, that the lessor, if he had not assigned, could not interpose any objection to the renewal—that it was not competent for him to say that he had not a sufficient estate to support the estate he contracted to make, and that he was bound to procure such estate to the utmost of his means—said : "The rule which affects the purchaser is just as plain as that which would entitle the plaintiff to a specific performance against Wood. * * * The decree against Wood would have been specifically to perform his covenants—that is, to execute a new lease specifying the covenants in the former *in totidem verbis*. It is a fallacy to state that he is bound to a certain extent, and not to the whole. He either is not bound at all, or, if as standing in the place of Wood, the engagement can be neither greater nor less than that of the person he represents. The plaintiff, being entitled to a specific performance of a definite covenant to grant particular leases, has the same right

against Stibbert, who cannot say he will do somewhat less than Wood engaged to do. The right against Stibbert, if any, is co-extensive with that against Wood." * * * *Piggot v. Mason,* 1 Paige, 412, was the case of an assignee of the lessee against an assignee of the lessor, for a specific performance of the covenant to renew. And the chancellor decided that a new lease should be made for a similar term with the like covenants and conditions inserted therein as in the first lease, except the covenant of renewal. This is precisely such a decree as we ask here.

2. Lessees are purchasers, against whose rights voluntary conveyances for nominal considerations are fraudulent and void. *Furnival v. Crew,* 3 Atk. 84; 1 Platt on Leases, 741, 742. The cases of *Hall v. Delaplaine,* 6 Wis. 206, and *Greenaway v. Adams,* 12 Ves. 395, contain nothing contrary to this.

3. Even if it be true, as held by the chief justice, that the lease was extended for ninety-nine years by the giving of the notice, the conclusion that the cause should be dismissed is erroneous. The bill still shows a cause of action against *Orton* for an *injunction* to restrain him from hindering the plaintiff from drawing 2,000 cubic feet of water per minute. 1 Story's Eq. §§ 720, 721. The temporary injunction was by the judgment of the court below perpetuated, and this part of the judgment should be affirmed. The supplemental bill also stated a cause of action against defendant to restrain his prosecuting a certain suit against plaintiff's agent, and also a cause of action for damages. The record (though not the printed case) shows that an injunction was granted, served on the defendant, and an injunction bond given. Testimony has also been taken, though not sent up to this court, to prove the damages alleged. The perpetuation of this injunction, and the issue as to damages, were reserved by the court below for trial at a subse-

quent term. There is also a second supplemental bill alleging facts upon which plaintiffs pray that defendant may be decreed to rebuild the dam; and upon this issue was joined, and the court ordered that this issue be tried at the next term. For this reason, also, the bill ought not to be dismissed.

4. Counsel argued that the lease was not in fact extended by the mere act of the lessees in giving notice that they desired an extension; that this is not the usual mode of renewing or extending a lease for the period of ninety-nine years; that it is not correct to say that a new lease, if executed, would be " in no respect more efficacious or obligatory " than the old, nor " the rights or liabilities of the parties either greater or less," since the personal responsibility of the defendant would be substituted for that of the original lessors; that the lessors, as before shown, have the right in equity to compel such substitution (*Earl Brook v. Bulkeley,* 2 Ves. Sen. 497); that the language used in the lease in this case naturally imports an undertaking by the lessors to do some act upon the expiration of the four years, in case the lessees should give the required notice; that the lease having been executed in such a manner that it was not entitled to record, it cannot be supposed that it was the intention of the parties in case of a renewal for ninety-nine years to have the evidence of a demise for so long a period rest upon an unrecorded lease and a verbal notice; that it is not consistent with ordinary prudence for men to rely in such a case upon possession alone as notice of their rights, especially where both the dam and mill were liable to destruction (as both have in fact been destroyed), so as to leave no one in actual possession; that even if the four years' lease had been legally recorded, the right of the lessees to an additional 1,000 cubic feet would have rested in a mere verbal notice, without the execution and recording of a new lease; that *Ranlett v. Cook* being against

a stranger to the lease, to enjoin a tort, the court rightly held that the lease to plaintiff for ten years, with covenant to renew for ten more (plaintiff being in possession after the expiration of the first ten years, and his rights as lessee not disputed by his lessor), was equivalent to a lease for twenty years *for the purposes of that case*, and the language of the court ought to be understood with reference to the facts of the case; and that there is no case reported in which, there being a present demise with a covenant on the part of the lessor to extend or renew for a longer period on the doing of an act by the lessee *at a future time*, it was held that such covenant was a demise *in præsenti*, or took effect at such future time without any further act of the lessor.

5. Counsel reviewed the former decisions in this cause (4 Wis. 335; 21 id. 289), and contended that the right of plaintiffs to a new lease was *res adjudicata*.

The motion for a re-hearing was disposed of at the June term, 1870.

DIXON, C. J. It is argued, on the motion for a re-hearing, that the supplemental complaints, one or more of them, are in the nature of bills to restrain the defendant from violating the covenants of the lease, and so to compel a performance of them; and that the action should be retained for the purpose of granting such relief in case the plaintiffs show themselves to have been entitled thereto. This is a point I have not examined, and do not decide. I wish to modify the opinion, therefore, so as to say that the action should be dismissed, unless it should be retained for the purpose of granting such relief—a question which is left open to future consideration.

*By the Court.*—Re-hearing denied.