# CASES DETERMINED

AT THE

*June Term, 1872.*

---

## NOONAN and another vs. ORTON.

PRACTICE. (1–3) *Effect of reversing judgment and remanding cause without directions.* (4–10) *Right of one of several plaintiffs to withdraw from the action.* (13) *When denial of such right is error against defendant.* (11, 12) *When error not ground for reversal.* (14) *Costs —"Prevailing party."*

1. Where a judgment is reversed and the cause remanded without instructions, the cause stands in the court below as it did at the former hearing, and the parties have the same rights, and the court the same discretion, as to further prosecution, that they then had.

2. The *reasons* given by the appellate court for the reversal are to be looked to in order to ascertain whether a final determination of the cause was intended.

3. Where the two justices of this court who alone took part in the decision of an appeal, agreed in reversing the judgment, but did so upon conflicting grounds, so that there was no decision of this court that defendant was entitled to a judgment of dismissal, the court below did not err in denying his motion for such judgment.

4. Where plaintiffs are partners, and the obligation sought to be enforced runs to the partnership, the right of one plaintiff to discontinue the action against the will of his coplaintiff, is generally conceded, except when fraud and collusion are shown, or it appears that the remaining plaintiff will suffer injury.

5. Under the rule that, if the consent of one who should be joined as plaintiff in the action cannot be obtained, he may be made a defendant (2 Tay. Stats., 1420, § 20), a coplaintiff should not, in general, be compelled to continue the prosecution of the action against his will,

but should be permitted to withdraw unless peculiar circumstances are shown proving that injustice would thereby result to the other parties in interest.

6. The court, in directing the discontinuance in such a case, may give directions as to the costs, etc., already accrued, may determine when and under what circumstances the retiring plaintiff shall appear and answer as a defendant to the action, and may make any other proper order in furtherance of justice.

7. In a suit upon an obligation running to the two plaintiffs as copartners, one of them signed a written direction for the discontinuance of the action *as to him*, and a revocation of any authority granted by him to any attorney to bring the action in his name; and delivered such written discontinuance to the defendant, to be presented to the court as a basis of defendant's motion to dismiss the action. *Held*, that it was error, *as against defendant*, to deny such motion.

8. It is very doubtful whether a covenant, in articles of partnership, that neither party will sell his interest in the partnership property without the consent of the other, is violated by a sale made *after* an action has been commenced for a dissolution of the partnership, the appointment of a receiver, the collection and payment of debts, and the distribution of the assets, and after a receiver has in fact been appointed; such sale being only of the vendor's interest after settlement of all claims against the partnership.

9. An order of court made in such action for a dissolution, authorizing the partners, or either of them, to prosecute the present suit, does not affect the right of one of the plaintiffs herein to withdraw from the suit.

1`. The statute (2 Tay. Stats., 1572, § 1) which provides that in case of a transfer by sale, etc., of the interest of a plaintiff, "the action shall be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action," will not prevent the court from allowing, on defendant's motion, a discontinuance of the action as to one of the plaintiffs who has sold his interest to the defendant and demands such discontinuance.

11. The action was brought originally to compel defendant to renew a certain lease to plaintiffs, and perform the covenants thereof, and to restrain him from doing certain acts in violation of plaintiffs' alleged rights under the lease. By supplemental complaint, the demand for relief by injunction was enlarged, and damages demanded for alleged violations of defendant's covenants. In denying defendant's said motion for a dismissal of the action, the court (on whose motion does not appear) incorporated into the order a further direction

that so much of the complaint as asked a renewal of the lease be dismissed. *Held*, that defendant is not injured by such direction, and cannot have it reviewed on appeal from the order.

12. If defendant, after a dismissal, not asked for by himself, of so much of the complaint as seeks a renewal of the lease, was entitled to have the whole complaint dismissed, he should have moved for an order for such dismissal on that ground, and should have appealed from an order denying such motion.

13. When the record shows a written discontinuance by one plaintiff as to himself, and revocation of the authority of any attorney to prosecute the action in his behalf, and defendant's motion for a dismissal is founded in part on such discontinuance, and the order denying the motion expressly refers to such discontinuance, this court, on appeal from the order, holds that the question of the effect of such discontinuance is before it.

14. Where the order or judgment appealed from is *modified* or *partially* reversed, the appellant is the *prevailing party* within the meaning of the statute which (except in a few special cases) awards costs to the prevailing party.

APPEAL from the Circuit Court for *Racine* County.

The original bill in this cause, filed in 1855, prayed for a decree requiring the defendant to execute and deliver to the complainants a lease for ninety-nine years of a certain amount of water, to be taken from the dam therein described, pursuant to the alleged covenants for a renewal contained in a previous lease. There were further prayers, (1) that defendant be required to raise said dam to a certain height, and to perform the covenants of said former lease in respect to the raising and repair of said dam and the supplying of the amount of water claimed by plaintiffs; and (2) for an injunction restraining defendant, etc., from interfering with the enjoyment by plaintiffs of said amount of water. By a supplemental bill the plaintiffs charge subsequent interferences by defendant with their enjoyment of the water power claimed by them, and suits brought by him against persons whom they had employed to remove obstructions to the flow of the water to plaintiffs' mill; and they demand an injunction restraining him from interposing said obstructions, and from prosecuting said suits; and also de-

mand that an account be taken of the damages sustained by them by reason of the alleged wrongful act of defendant, and a personal judgment against him for such damages, etc.    A temporary injunction was granted, as prayed for.    There was a "second supplemental complaint," filed after the adoption of the code, which, besides repeating the prayers of the original and first supplemental bills, demanded a further judgment for damages for alleged further breaches of defendant's obligation to repair said dam.    A demurrer to this supplemental complaint was overruled; and the decision was affirmed on appeal to this court; but it was held that said supplemental complaint should be dismissed upon defendant's filing an undertaking not to avail himself of the statute of limitations, nor advert to the date of the new lease which the court might decree him to execute, in any action at law which might be brought against him for breaches of the covenants of such lease.    21 Wis., 283–294.    The defendant then answered; and in 1868 the court heard and determined so much of the issue as related to the covenant for a renewal of the lease, and rendered judgment that defendant should execute a lease in a certain specified form and bearing date January 8, 1855.    The injunction granted on filing the original bill was also made perpetual; and it was ordered that " the other issues or questions involved in this action, including costs, damages, the perpetuation of the second injunction granted in 1856, and whether a decree requiring said *Orton* to rebuild the dam should be made or not," might be tried at the next term.    On appeal from this judgment to the supreme court, DIXON, C. J., held that the original lease contained a demise for a future term of ninety-nine years, to take effect at the option of the lessees and upon notice by them, and that no new lease was contemplated by the parties, or should be required of the defendant.    COLE, J., was of opinion that defendant should be required to execute a new lease, but not such a one, in certain respects, as was required by the judgment of the court below.    See 27 Wis.,

300–326. PAINE, J., took no part in the decision of the cause, having been of counsel therein. The result was, that the judgment was reversed, but the cause was remanded "without directions as to further proceedings thereon."

After the cause was remitted to the circuit court, the defendant filed therein a paper signed by the plaintiff *McNab*, in the following words : [Venue and title.] "I hereby revoke any and all authority heretofore given, of any and all attorney or attorneys, to prosecute the above entitled action for me, or in my name, and I hereby discharge them and each of them herein ; having served Jason Downer with such notice and revocation heretofore, he has no right to notice this action for trial or for judgment for me, and I hereby revoke all authority of said Downer or any one else to appear and prosecute said action for me, and I withdraw from the prosecution of the same, and refuse to execute or enter into any lease, renewal of lease, or contract, or covenant or covenants in relation to the renewal or extension of the lease or contract mentioned in the complaint herein with *Noonan* to said *Orton*, or to any assignee or assignees of his, or to any one else; and so far as I am concerned, I hereby discontinue the action. P. McNAB. " Thereupon the defendant moved the court, " upon the record and proceedings in this action, " to enter final judgment therein, dismissing the action without prejudice, " in accordance with the remittitur, decree and opinions of the supreme court, delivered upon the demission of the appeal for [from] the final judgment in the cause. " In opposition to the motion, affidavits, etc., were filed tending to show that *McNab* had sold and transferred to the defendant his interest in the lease in question and in the property of the firm of *Noonan & McNab*, and had also brought an action against *Noonan* to close up the business of the firm ; that the assets of said firm were in the hands of a receiver ; and that, by an order in that action, the court authorized the plaintiffs, or either of them, to prosecute the present suit. Thereupon the court made the following order :

" The remittitur of the supreme court having been filed herein, from which it appears the judgment of this court, entered herein October 27, 1868, has been reversed, it is therefore ordered by this court that the judgment of the supreme court be, and hereby is, made the judgment of this court, and its judgment of October 27, 1868 is reversed and vacated. And it is further ordered by the court, that the motion of the defendant to dismiss this action be and is hereby overruled.

" But, it appearing to the court that the plaintiff *Peter McNab* has declined and refused to execute any renewal of the lease mentioned in the complaint, it is hereby ordered that so much of the complaint as relates to and asks a renewal of the lease mentioned in the complaint by the execution of a new instrument, be and hereby is dismissed, without prejudice to any other action or actions for the renewal of said lease or covenants therein ; but the action is retained as to all questions relating to the granting and perpetuating of the injunctions, and as to all other questions except that of the specific performance of the agreement to renew."

The defendant excepted to the order, " to the whole thereof, and any [every ?] part of the same ; " and he appealed from " such part " of said order " as denies the motion of defendant to dismiss the action without prejudice, and so much of said order as orders said action to be retained as to all questions relating to the granting and perpetuating of injunctions, and as to all other questions except that of a specific performance [of the agreement] to renew."

*John J. Orton*, appellant, in person :

1. The judgment having been reversed, and no further proceedings ordered by this court, the only thing the court below could do was to make the judgment of this court its own judgment, and dismiss the action. Laws of 1864, ch. 264, sec. 7 ; *Miner v. Medbury*, 7 Wis., 100–102 ; *Carney v. Emmons*, 9 id., 114–118 ; *Snyder v. Wright*, 13 id., 689 ; *Pelton v. Knapp*, 21 id., 72 ; *Garbutt v. Bank*, 22 id., 384–395 ; N. Y. Code, 1867,

sec. 340, pp. 644, 659; 2 Whit. Pr. (ed. of 1854), 248. The old chancery practice in such cases was the same. 1 Barb. Ch. Pr., 422, 423; *Hosack v. Rogers*, 7 Paige, 108; 2. Daniell's Ch. Pr., *1199. 2. The plaintiff *McNab* could dismiss the action as regards himself (1 Barb. Ch. Pr., 227, and cases cited; Parsons on Part., 95, 172, note); and after he had withdrawn, the action could not proceed without him. He may be made a defendant; but until he is made a party, the action is at an end. 3. The questions arising on the second supplemental bill were disposed of on the demurrer thereto (*Noonan et al. v. Orton*, 21 Wis., 283); the defendant has filed the stipulation required, and the second supplemental bill has been dismissed; and on the same ground the first supplemental bill ought to be dismissed. 4. The original bill having been disposed of by the judgment of this court, the supplemental bill goes with it, and leaves nothing for the court below to act upon. 5. Plaintiffs having themselves dismissed their bill for a specific performance, there was nothing left to show any cause of action against defendant, either for an injunction or for damages. The only liability alleged against him was a liability to renew the lease, and a liability on the covenants thereof when so renewed and made his covenants. The action for a renewal being dismissed, he remains liable, if at all, only as assignee of the lease in possession, and no longer than while he held the estate; and this liability is nowhere claimed in the original or supplemental complaints. 6. An amendment and supplemental bill, when allowed and filed, become part of the original bill, and cannot be heard separately from it. 3 Dan. Ch. Pr., 1554, note 1.

*Jason Downer*, for respondent:

Although the former judgment of the circuit court was reversed, yet the opinions of this court are a part of the record, and show clearly that there was not a majority of the court in favor of dismissing the action. Even the opinion of the chief justice, as modified on the motion for a rehearing, was not in

favor of dismissal. The judgment appealed from was not a final judgment as to the *whole* case, but retained the case as to other matters. This court had no jurisdiction to decide as to matters not embraced in the judgment; and it is clear from the opinions that it was not the intention of this court that judgment of dismissal should be entered by the court below. The case is not within sec. 7, ch. 264, Laws of 1864, or any of the authorities. 2. The court below could not rightly dismiss the action by reason of the paper signed by *McNab*. He, having sold out his interest to defendant, had no right himself, or through defendant, to control or dismiss the action. *Horton's Appeal*, 13 Pa. St., 69; *Geortner v. Trustees of Canajoharie*, 2 Barb., 625; 8 W. & S., 63; Parsons on Part., 360; Story on Part., §§ 328 et seq. The vendee of the interest of a partner in a firm acquires only an interest in the surplus after payment of debts — no right of possession or control; and can compel an account only through a court.

The following opinion was filed at the January term, 1872.

DIXON, C. J. The statute enacts: "In all cases, the supreme court shall remit its judgment or decision to the court from which the appeal was taken, to be enforced accordingly; and if the appeal is from a judgment, final judgment shall, thereupon, be entered in the court below, in accordance therewith, except where otherwise ordered." 2 Tay. Stats., 1633, § 7. This statute plainly contemplates a case where the supreme court is able to and does pronounce a judgment or decision in the cause, which judgment or decision shall be a guide for future action in the court below, and bind that court to proceed in conformity therewith. It likewise plainly contemplates a case where, if deemed just and proper, this court is capable of making some other order or giving some other specific directions for further proceedings in the court below, in place of the entry in that court of final judgment in accordance with the judgment of this court. But the case here under consideration was not such a

Noonan and another vs. Orton.

case. Only two of the justices of this court were qualified to sit when the cause was heard on appeal, and they were divided in opinion, and hence the court was incapable of pronouncing any judgment or decision directing the court below how to proceed, or which bound that court to enter judgment in accordance therewith. And for the same reason, also, this court was incapable of making any order or giving any specific commands or instructions in the premises. *Noonan v. Orton*, 27 Wis., 300. Hence, as correctly expressed in the remittitur, which is again brought up on this appeal, the cause was "remanded to the said circuit court without directions as to further proceedings therein." The statute, therefore, does not apply to such a case, and the question arises as to what is the effect of such mere judgment of reversal, the two justices of this court concurring in that judgment, but upon entirely different and conflicting grounds. Is such judgment conclusive of the action, and must the court below, upon the cause being remanded, proceed to dismiss it? It is manifest, if we consider the reasons which led to the judgment of this court, and resulted in its being one of mere reversal without directions as to further proceedings in the action, that this court did not intend such judgment to be a final determination of the cause. There was the very point of divergence, as to what such final determination should be. The two members of this court competent to act and to decide, could not agree, and of course the court, as such, had no intention with respect to it. It was impossible, under the circumstances, that the court should have. In such case, the reasonable and proper rule would seem to be, that the reversal left the action in the court below in the same condition as it was before any judgment was rendered in it. If this were not the rule, but that the action must be dismissed, then it would follow that final judgment must be rendered against a party without any intention or decision to that effect on the part of the court, which would be against reason. And upon examination we find that such has been held to be the general effect of a reversal

of a judgment in equity, as this is, without directions, where no statutory provision or rule of court intervened to give it a different operation. The judgment being reversed, and the cause remanded to the court below, without instructions, it stands there precisely as it did at the former hearing, and the parties have the same rights, and the court the same discretion, as to further prosecution, that they then had. *Broaddus v. Broaddus,* 3 Dana, 536; *Riley v. Wiley,* id., 76; *McLaren v. Hopkins,* 1 Hopk. Ch. R., 576, 578; *Pratt v. Grimes,* 2 Chicago Legal News, 18. And the case of *McLaren v. Hopkins* is also an authority, if any authority be needed, that the reasons given by the appellate court are to be looked to in order to ascertain whether a final determination of the cause was intended. The court is, therefore, of opinion that the defendant was not entitled to a judgment dismissing the action on this ground, and that so far there was no error in the order of the court below overruling his motion for that purpose.

But the motion of the defendant was likewise based on another ground, which was the revocation in writing by the plaintiff *McNab* of any authority on the part of the attorney of record for the plaintiffs to appear and prosecute the action for him or in his name, and also his, *McNab's,* formal discontinuance of the action so far as he himself was concerned. Was the defendant entitled to any part of the relief demanded by the motion upon this ground? Was he entitled to have the action dismissed as to the plaintiff *McNab?* The plaintiffs are partners, and it is laid down by Mr. Gow, and is indeed a principle generally well settled, that one partner is competent to release a supposed right of action, even after proceedings to enforce it have been instituted by the firm. Gow on Parnership, 65. And the same author goes on to observe that as he may release an action, it seems to follow that he has the power of suspending proceedings in it, and he cites the case of *Harwood v. Edwards,* in the King's Bench, reported by the author, note (r), in which it was held, where three partners sued as

plaintiffs, and two out of the three agreed with the defendant to accept common bail and stay proceedings for six weeks, that this agreement was binding· on the third partner.    And Mr. Parsons also states the rule, that if two partners commence an action, one may release the subject matter of it, which release will be binding upon his copartner and operate as a bar to the action.    Parsons on Partnership, 174, note, citing *Barker v. Richardson*, 1 Younge & J., 362; *Arton v. Booth*, 4 J. B. Moore, 192; *Furnival v. Weston*, 7 id., 356; *Jones v. Her-bert*, 7 Taunt., 421; *Wilson v. Mower*, 5 Mass., 411.    In the case last cited, Chief Justice PARSONS says:    "It has been inquired what remedy a man has, who has a good cause of action, where no severance lies, with another who will not consent to prosecute.    *It is his folly, saith the law, to be con-cerned with such a man.*    But as any one of the parties inter-ested in a personal action may release it, if it was released, the releasor would be accountable to his partners in the contract for the damages they had sustained.    And if one of the parties should unreasonably refuse to join in the prosecution of an action, which might well be maintained, perhaps the other par-ties might have a remedy by a special action on the case.    But of this we give no opinion, as the point is not before us."    But in *Loring v. Brackett*, 3 Pick., 403, one of two joint plain-tiffs, who had formerly been partners, having agreed that the action should be discontinued, the other made affidavit that the cause of action was a debt due to the partnership, and that the agreement was made to defrauð him by collusion between his coplaintiff and the defendant; and thereupon the court refused to order a nonsuit.    And Mr. Gow makes cases of gross col-lusion with debtors, where fraud manifestly appears, an excep·tion where a release has been executed, and says that a court of law will control the legal power of one partner to release the debt, and, in the exercise of its equitable authority, will set aside a release granted by him.    Gow on Partnership, 61. And so, in *Winslow v. Newlan*, 45 Ill., 145, it was held that

one of two plaintiffs has no right to dismiss a suit, against the objections of the other, unless he can satisfy the court that the latter has no interest in the claim, or that he is liable to be injured by its further prosecution, and even then he has no such right if his coplaintiff will indemnify him against loss. In *Langdale v. Langdale*, 13 Ves., 167, the lord chancellor decided that one coplaintiff in chancery might have the bill dismissed as to himself, upon consent of the defendant, and without notice to, or consent of the other coplaintiff. But, in a later case also in chancery, the right of some of the plaintiffs to withdraw and have the action dismissed as to themselves was denied, if, by so doing, the remaining plaintiffs in the suit would be injured, and the order was so framed as to protect them from injury. It appearing that one of the plaintiffs proposing to dismiss was out of the jurisdiction of the court, he was required to undertake to put in his answer as defendant when the bill was amended, within a fortnight after the filing of the amended bill. *Holkirk v. Holkirk,* 4 Maddock's Ch. R., 50.

Such are some of the authorities, in fact all we know of, touching the right of one plaintiff to discontinue against the will of his coplaintiff in a case like this. It will be seen that the power is generally conceded except where fraud and collusion are shown or it appears that the remaining plaintiff will suffer injury. In this case, it will be borne in mind, the plaintiff *McNab* did not attempt an entire discontinuance of the action. He only sought to discontinue as to himself, or to withdraw as one of the parties plaintiff to it. It will also be remembered that no fraud or collusion on his part in this particular is shown, nor is it made to appear that his coplaintiff will sustain an injury by his being permitted to withdraw. It is provided generally by statute that, if the consent of one who should be joined as plaintiff in the action cannot be obtained, he may be made a defendant, the reason therefor being stated in the complaint. 2 Tay. Stats., 1420, § 20. With such a statutory provision as this

in force, and which is in substance and effect the old chancery rule enacted and made applicable to all actions, no good reason is perceived why the plaintiff *McNab* should be compelled to continue the prosecution of the action against his will, thus subjecting himself to future liability for the costs and expenses of the litigation, and to all the discomforts and vexations which may attend it. It would seem, under the operation of this rule, that any party plaintiff, deeming the litigation unprofitable or hopeless, or wishing from any other cause to withdraw from active participation in it, should be at liberty to do so at his pleasure, unless very peculiar circumstances are shown proving that injustice would thereby result to the other parties in interest. As in *Holkirk v. Holkirk*, the court, in directing the discontinuance, may make such order in furtherance of justice as shall be proper. It may give directions as to the costs and expenses which have already accrued, or as to how they shall be finally apportioned, and may determine when and under what circumstances the retiring plaintiff shall appear and answer as a party defendant to the action. If a like statutory regulation had existed in Massachusetts and Illinois at the time the decisions above referred to were made, it may be regarded as very doubtful whether the courts would have decided as they did, provided that the motions in those cases had been only to discontinue the actions as to the persons plaintiff by whom the motions were made. It is the opinion of this court, therefore, that the motion to dismiss, so far as the same was founded upon the plaintiff *McNab's* discontinuance of the action as to himself, and his revocation of all authority on the part of the attorney for the plaintiffs to appear and prosecute for him or in his name, should have been granted, upon such terms, in case the court below had seen fit to impose any, as, under the circumstances, would have been just and proper. The order appealed from, or that part of it denying the motion to dismiss, must therefore be so far reversed, and the cause remanded for further proceedings as directed in this opinion.

In *Winslow v. Newlan* the question was made, whether the refusal of the court below to dismiss the action on the applica- tion of one of the two coplaintiffs, could be taken advantage of or assigned as error by the defendants on their appeal, and the court held it could not. No such objection is taken by the counsel for the plaintiffs here, and, if it had been, we think it would have been untenable. This case differs essentially in its circumstances. It would seem here that the written di- rection for the discontinuance and revocation was made and signed by the plaintiff *McNab*, and delivered to the defendant, to be presented to the court and made the basis of a motion on his, defendant's, part to dismiss the action. Under such cir- cumstances we see no reason why the defendant should not have been permitted to avail himself of it as a proper ground of motion in the court below, or why, if it was erroneously re- jected by that court, he may not assign it for error on this ap- peal. It clearly cannot be said that the defendant has no in- terest in having the action dismissed as to one of the plaintiffs, or that he may not be benefited by it. It would certainly di- minish the number of his opponents, and bring over to his side a part of the enemy's forces, which in war would be con- sidered good tactics, whether it be so in a law suit or not. But it may be so in the latter, and may add materially to one's means of attack, or the resources by which a successful de- fense may be made.

The other branch of the order appealed from seems not to raise any question for our consideration. Although made at the same time with the order overruling the defendant's motion to dismiss, and incorporated with it, yet it appears to have no necessary or other connection with that order than the mere fact that it was made and entered in that form. The motion of the defendant to dismiss was unconditionally denied, and there the order upon such motion appears to have ended. Then follows the residue of the entry, amounting to a distinct and independent order, based upon considerations entirely dif-

ferent from those upon which the motion was made, and which are recited in the order. That part of the entry begins thus: "But it appearing to the court that the plaintiff *Peter McNab* has declined and refused to execute any renewal of the lease mentioned in the complaint, it is hereby ordered that so much of said complaint as relates to and asks a renewal of the lease * * * be and hereby is dismissed," etc. This was a kind of relief, or change in the form of the action, not connected with the motion and not asked for by it. It would seem to have been granted at the instance or upon the motion of the plaintiff *Noonan;* but whether it was or not, the record fails to disclose. The order may have been so made, or it may have been directed by the court without being applied for by either party. We are not informed. If made on the application of the plaintiff *Noonan,* then the question argued at the bar, whether the plaintiffs could voluntarily dismiss their action as to the primary and entire cause of it set forth in the original bill of complaint, and continue to prosecute it as to those matters arising subsequently and which have been brought in by supplemental complaints, might have been presented. It is contended by the defendant that when the principal cause has thus failed, the adjuncts or supplements must fail with it. Not being informed as to whether the plaintiffs have voluntarily dismissed their original complaint or not, we are not required to consider what would be the effect of such dismissal, and cannot do so. If it was not so dismissed, and if the law is, nevertheless, that the supplemental complaints should also have been, that order remaining unreversed, then it was incumbent upon the defendant to have made his motion for that purpose. And if, furthermore, the original cause of action or complaint was not so dismissed, then it follows that the defendant was not prejudiced by such order, or because the court below did not go further and dismiss the supplementary ones likewise, unless the defendant made proper application for that purpose, and the same was improperly denied. He

clearly suffered no injury from the mere order of the court dismissing the action of the plaintiffs as to the original cause, which is all that the record shows; and from such an order he cannot appeal, or claim that it should be reversed on his appeal from the other order made and entered at the same time.

*By the Court.*— Order reversed as above indicated, and cause remanded for further proceedings according to law.

The respondent moved for a rehearing and the following opinion upon the motion was filed at the June term, 1872.*

DIXON, C. J.   The learned counsel for the plaintiff *Noonan* moves for a rehearing on several grounds stated in his argument, none of which are in our judgment sufficient to sustain the application.

1. It it exceedingly doubtful whether the sale by the plaintiff *McNab* to the defendant *Orton* of his, *McNab's*, share or interest in the copartnership property of the firm of *Noonan & McNab* was, under the circumstances, any violation of the covenant or stipulation contained in the articles of copartnership. Such sale, as it seems, did not take place until after there was an end of the copartnership by the commencement of an action for a dissolution, and for the collection and payment of debts and distribution of assets under the direction of a receiver, who had been appointed and had taken possession of all the copartnership effects and property.   The sale by *McNab* was only of his residuary individual interest after all proper claims upon the copartnership were paid and satisfied.   It is very doubtful whether a proper construction of the covenant would not limit its operation to a sale by either partner without the consent of the other during the life of the copartnership, or so as to prevent a dissolution in that way.   It is very doubtful, when the copartnership was in effect ended, or no longer to be continued except for the purpose of winding up its affairs, whether *McNab*

*The argument of respondent's counsel upon this motion is not found on the files.

was not at full liberty to make the sale as he did. This matter is in so much doubt and uncertainty that we think, for the purposes of this motion, it cannot be held that *McNab* had no right to sell; and inasmuch as the alleged *fraud* upon the rights of *Mr. Noonan*, in the sale by *McNab* and his discontinuance of the action, grows out of and is based solely upon the alleged violation of the covenant not to sell, it follows that nothing is shown in this respect to prevent giving effect to *McNab's* order discontinuing the action as to himself.

2. The order of the court in the action of *McNab v. Noonan*, for the dissolution of the copartnership, authorizing either of the parties to that action (who are the plaintiffs in this) to prosecute this action, was merely *permissive*. It was not ordered or adjudged by the court in that action, that it was necessary or proper for the protection of the rights and interests of the firm or the rights and interests of its creditors, that this action *should* or *must* be prosecuted by or under the direction of one or both of the plaintiffs. Neither did the court adjudge or direct that the same should be prosecuted by or under the direction of the receiver. On application of the plaintiff *Noonan*, the defendant there, the court merely permitted or licensed such prosecution by the plaintiffs or either of them. The order read (we quote from the argument of counsel) as follows: "It is hereby ordered by the court that said *Noonan* and *McNab*, or either, are allowed to prosecute said suit in the Racine county circuit court to judgment; and orders of this court to the contrary are hereby modified so as to allow such prosecution." This case stands, therefore, as if there had been no appointment of a receiver and no action for a dissolution, and presents merely the general question of *McNab's* right to discontinue or withdraw himself from the litigation.

3. The provisions of sec. 1, ch. 135, R. S. (2 Tay. Stats., 1572, § 1), have no application to or bearing upon the question here presented. It is true, as counsel says, that the vendee has a right to continue the action in the name of the original party,

or to cause his own name to be substituted. It is also undoubtedly true, as he says, that the vendor, after selling, cannot, without the assent of the vendee, exercise the option of discontinuing. He loses that right by the sale and under operation of the statute. But counsel well observes: "It may be said that *Orton*, being the vendee, had a right to do anything in the name of *McNab* that *McNab* could do if he had not sold to *Orton*." Just so we think; and we think, furthermore, if *McNab* chose to discontinue and *Orton* assented to and insisted upon his doing so, that no other person can be heard to complain of it.

4. It is said we have made a gross mistake in supposing that *McNab's* discontinuance, or right to discontinue, was before us at all on this appeal. The motion was founded, as appears by it, "upon the record and proceedings in this action." A part of such record and proceedings as found in the printed case immediately preceding the motion, was the written revocation and discontinuance signed by the plaintiff *McNab*. In the order of the court overruling the motion, express reference was made to the written discontinuance, or to that part of it in which *McNab* refused to execute any renewal of the lease; and the same was made the foundation of that portion of the order dismissing the complaint so far as it asked such renewal. The learned counsel is of course much more familiar with what occurred in the court below than we are, and it may be that he can see that *McNab's* discontinuance was entirely foreign to the order under consideration, and from which the appeal was taken; but looking on the face of the record, and taking that for our guide, as we are bound to do, we certainly cannot see it in that light. It appears to us, not only that the written discontinuance was before the court upon the motion, as in some way the foundation of or connected with it, but that it was also actually considered by the court in making the order.

5. Costs in this court are given to the prevailing party by statute, and, except in actions for divorce and perhaps

some others which are subject to peculiar rules and provisions, the construction has always been that the court has no discretion in the matter. And the modification or partial reversal of an order or judgment has for this purpose always been considered equivalent to an unqualified or total reversal. The party obliged to come here by appeal for such modification or partial reversal is considered the prevailing party and entitled to costs.

6. It is not necessary, nor does this court controvert or question the general correctness of the principles of law stated by counsel in his sixth point or proposition. An examination of the record fails to disclose, as it seems to us, any facts and circumstances calling for an application of those principles. It does not appear that the withdrawal of the plaintiff *McNab* from the litigation is such a disturbance of the rights of his co-partner, or of the creditors of the firm, as ought to operate to bind *McNab* to continue the prosecution of it against his will, and against what he may consider to be for the good of himself and of the firm. The action may still go on, if the plaintiff *Noonan* so elects, in his name, *McNab* being made a party defendant, and thus all the rights, legal and equitable, of the partner choosing to prosecute, be saved and redressed.

*By the Court.*—Motion denied.