COTTRILL, Administrator, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

RAILROADS: NEGLIGENCE. *Injury to railroad engineer. Alleged contributory negligence in refusing to jump from locomotive.*

1. In determining whether a locomotive engineer, injured by a collision while running a train upon a railway, was guilty of negligence in remaining at his post and not jumping off before the collision, the standard of ordinary care and prudence on his part must be fixed with reference to the peculiar responsibilities of his employment.

2. The mere facts that such an engineer, running a train upon a railroad, after seeing a signal to stop, and after reversing his engine, might, with probable safety to himself, have gotten off from his locomotive before its collision with another train then approaching, and that he remained at his post grasping the reversing lever and throttle until the collision occurred, will not justify the court in holding, as matter of law, that he was negligent.

3. In an action for injuries from negligence, the jury, by special verdict, found that negligence of the person injured contributed materially to the injury, and also found specially that, "in the exercise of ordinary care and prudence," he might have done a certain act, which, if done, would or might have saved him from the injury; and there was neither finding nor proof of any other facts tending to show contributory negligence. The special fact so found not being such that it can be said, *as matter of law,* to establish contributory negligence: *Held,* that the court below should have granted a new trial on plaintiff's motion, instead of rendering judgment for the defendant on such verdict.

APPEAL from the County Court of *Milwaukee* County.

Action for an injury to the plaintiff's intestate resulting in his death, alleged to have been caused by defendant's negligence. At the time of the accident, the deceased was a locomotive engineer in defendant's employ, and was engaged in

operating a switch-engine in defendant's yards at the city of Milwaukee; and the injury was caused by a collision between the said engine and a train on defendant's road. The complaint alleges that about eight or nine o'clock on the evening of a certain day, the deceased had made up a train of about thirty freight cars, and, in the line of his duty, was proceeding west from said yards, upon one of defendant's tracks, with said freight cars drawn by his engine, within the limits of the city, for the purpose of backing said train in on the side tracks; that while said engine and train were thus proceeding westward at a rate of speed not greater than two or three miles per hour, they were met by another of defendant's trains, consisting of five freight cars and a locomotive engine, backing up from the west on the same track at the rate of eight or ten miles per hour, without any signal given by whistle, bell or otherwise, and without any lights being displayed on the rear end of said train; that the .rear car of said eastward bound train was backed with great force and violence against the engine of the deceased; that when said train was first discovered by the deceased, it was distant from six to eight car lengths; that as soon as it was discovered by him, he instantly reversed his engine; and that while he was standing upright in the cab of said engine, with his right hand on the reverse lever thereof and his left hand on the throttle lever, and instantly after such reversal of his engine, the collision of said trains occurred. The other allegations of the complaint need not be stated. The answer denies all negligence on defendant's part, and alleges that the accident occurred through the lack of care and diligence on the part of the deceased.

There was a special verdict, consisting of answers of the jury to sixteen questions submitted them by the court; and there was no general verdict. The questions and answers regarded by this court as of importance upon this appeal, are recited in the opinion. .

Plaintiff moved to set aside the verdict and grant a new

trial, upon various grounds not important here. The court denied the motion, and directed judgment in favor of the defendant, upon the verdict. Plaintiff appealed from the judgment.

For the appellant, there was a brief by *Murphey & Goodwin*, and oral argument by *Mr. Murphey*. They contended, among other things, that the only fact found from which negligence of the deceased might be inferred, was that in the first finding, viz., that the deceased, after seeing the signal to stop and reversing his engine, might have jumped from the engine before the collision. But, (1) This finding was wholly unsupported by the evidence. (2) It was the duty of the court to instruct the jury that if the deceased was placed, without negligence on his part, in a position of danger, he was not responsible, as for contributory negligence, for an honest though erroneous exercise of judgment in getting out of the danger. *Pa. R. R. Co. v. Werner*, Sup. Ct. Pa., July 9, 1879; *Schultz v. Railway Co.*, 44 Wis., 644. And if this instruction had been given, it would have been impossible for the jury to have rendered this finding.

For the respondent, there were separate briefs by *Melbert B. Cary* and *Gregory & Gregory*, and oral argument by *Alfred L. Cary* and *Charles N. Gregory*. They contended, among other things, that there was no ground for saying that the finding by which the jury declared that carelessness of the deceased materially contributed to the accident, rested wholly upon the finding that he might, in the exercise of ordinary care and prudence, have gotten from the locomotive; that the former finding was entirely independent of the latter, and was sustained by abundant evidence tending to show that the deceased acted negligently, not only in failing to use the ordinary and proper means of self-protection after the danger had become obvious, but also in exposing himself and train to the danger; that the evidence was such that the jury might well find that the deceased was negligent in going out upon the

AUGUST TERM, 1879.          637

Cottrill, Adm'r, vs. The C., M. & St. P. R'y Co.

come-in track, instead of either using the go-out track at that time, or waiting until the outward bound train on that track had left, and then using the same track; that if the collision in this case had resulted in injury to the engineer of the train with which the deceased collided, and such engineer had brought suit, no jury would have hesitated to hold this defendant liable on the ground that Cottrill was guilty of negligence in that particular, and the court could not have set aside the finding, as not sustained by evidence; and that a like finding in this case is equally conclusive — the question being one of fact for the jury. *Strahlendorf v. Rosenthal*, 30 Wis., 674; *Langhoff v. Railway Co.*, 19 id., 489; *Dorsey v. P. & C. Cons. Co.*, 42 id., 583; *Schultz v. Railway Co.*, 40 id., 589; *Ewen v. Railway Co.*, 38 id., 613; *Bass v. Railway Co.*, 36 id., 450; *Roberts v. Railway Co.*, 35 id., 679; *Patten v. Railway Co.*, 32 id., 524; *Duffy v. Railway Co.*, id., 269.

ORTON, J. The jury found that the carelessness of the employees of the defendant materially contributed to the injury of the plaintiff; and therefore the following findings relating to the carelessness of the plaintiff need only be considered in determining the correctness or incorrectness of the judgment:

"Did the carelessness of Cottrill, deceased, materially contribute to the result complained of?"   "Yes."

"Could Cottrill, after seeing the signal to stop, and reversing his engine, in the exercise of ordinary care and prudence, have gotten off from his locomotive before the collision?"   "Yes."

"Could Cottrill have pulled his train out upon the go-out track, instead of the come-in track, and switched his cars by so doing?"   "Yes."

"If Cottrill had moved his train of 33 cars upon the go-out track, at the time he was going out, would he not have been in danger of the train going out on the Prairie du Chien track at 8:50?"   "Yes."

These special findings must be presumed to be all the facts found by the jury upon which the carelessness of the appellant was predicated; but, if such was not the presumption, there appear to have been no other acts or omissions of the appellant proved which show any carelessness on his part.

Treating these two last findings as still leaving the inference that the deceased was negligent in not taking the go-out track, notwithstanding the danger of a collision on that track with the Prairie du Chien train, as contended by the learned counsel of the respondent—which, to say the least, is very questionable,—the only other finding on which the general finding of the carelessness of the deceased was or could be predicated, is, that in the exercise of ordinary care and prudence he could have gotten off from the locomotive after the signal to stop, and after reversing his engine, and thus have escaped danger. Did his failure to jump off from the locomotive at the time and under the circumstances constitute such negligence on his part as to prevent a recovery?

It was in evidence that his fireman, on seeing the danger from a collision, jumped off and landed on the ground safely, and that the last he or anybody saw of the deceased, he was standing up in front of the boiler, and had the reverse lever in his right hand and the throttle in his left, and while he was in this attitude the collision took place, and by the concussion the tender was driven forward and against the deceased, and confined and crushed him against the hot boiler, and by this means, after great agony and suffering, he was killed.

According to the common appreciation of human conduct and character, this evidence presents an example of heroic bravery and fidelity to duty at the post of danger, most praiseworthy and commendable, and an occurrence worthy of lasting record in the book of heroic deeds. The very employment of the locomotive engineer, with its manifold and sudden and unexpected dangers, requires the highest type and best qualities of true manhood, invincible bravery and great

integrity; and it is but just to say that, as a rule, those who are selected for and engaged in this responsible employment, possess the full measure of these qualities, and the exceptions are very rare.

They are not men likely to jump off from their locomotive and run away to escape uncertain danger, or to omit any duty in sudden emergencies; and it is well that they are not. They are placed in charge of one of the mighty forces of nature, held in servitude by the most dangerous and intricate machinery, and great skill, unremitting attention, sleepless vigilance and fearlessness of danger are required to keep them in constant control. Their standard of ordinary care and prudence must be fixed and measured by the dangers and responsibilities of such an employment, and not by the common accidents of less responsible service. The question which should determine their reasonable care, or want of common care, is, how careful and prudent locomotive engineers would ordinarily and commonly act at such a time, in such a place, and under such circumstances, and not how firemen or other employees would or should. To hold as matter of law in this case that the deceased was guilty of a want of ordinary care and prudence, as the engineer in charge of the locomotive and of the train, in not jumping off at this crisis and abandoning his engine, from the mere apprehension of uncertain danger, would make a legal precedent very dangerous to the railway service in life and property, and by which it would be exceedingly difficult, if not impossible, to distinguish the cases and the circumstances in which it would or would not be the duty of an engineer to jump off and desert his engine, or to determine in point of time when he should do so, and the necessity or prudence for him to do so.

Can it be said in this case that the deceased had reason to know, or the means of knowing, that by remaining at his post he would be injured, and that by jumping off he would not? Who shall sit in judgment upon this brave engineer to coolly

determine the alternative risks and· chances which he is compelled to take instantly, with scarcely a moment of time for deliberation in such a terrible emergency. It will not do to establish a rule by which the duty of an engineer in such an emergency may be measured and dictated by cowardice and timidity, and by which his standing at his post and facing danger will be carelessness and negligence. The defense resting upon such a theory in this case cannot be sanctioned, although cases may possibly arise in which even the common prudence of an engineer might require him to leave his engine to escape danger; but such cases will be rare exceptions, and depend upon very peculiar circumstances.

In the case of *Rood v. The Am. Ex. Co.*, 46 Wis., 639, this court very recently refused to disturb the verdict of the jury when they found that the driver of a vehicle in the street, in collision with another vehicle, was *careless* because he jumped from his wagon and let go of the lines of his team. The jury may have found the negligence of the deceased to have consisted solely in his not jumping off from his engine; and from the two questionable and nearly contradictory findings upon the question whether he might not have taken another track, they probably did so find. Such a verdict did not warrant the judgment.

*By the Court.* — The judgment of the county court is reversed, with costs, and the cause remanded for a new trial.